Copies Mailed/Faxed 3-13-20 D+H
Chambers of Vincent L. Briccetti

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-13-20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FRANK E. VALENCIA,

            Plaintiff,

v.

WESTCHESTER COUNTY; CORRECT CARE
SOLUTIONS, LLC; RAUL ULLOA, Medical
Director; ALEXIS GENDELL, M.D., Medical
Administrator; JOON PARK, M.D., Physician;
JOSEPH K. SPANO, Commissioner; and
LEANDRO DIAZ, Deputy Commissioner,
            Defendants.
----------------------------------------------------------x

**OPINION AND ORDER**

19 CV 1699 (VB)

Briccetti, J.:

     Plaintiff Frank E. Valencia, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against: (i) the "County Defendants," comprising Westchester

County (the "County"), Commissioner ("Comm'r") Joseph K. Spano, and Deputy ("Dep.")

Comm'r Leandro Diaz; and (ii) the "CCS Defendants," comprising Correct Care Solutions, LLC

("CCS"), Dr. Alexis Gendell, Dr. Raul Ulloa, and Dr. Joon Park.

     Liberally construed, plaintiff's complaint asserts Fourteenth Amendment claims for

deliberate indifference to serious medical needs and violation of due process; a First Amendment

retaliation claim; and disability discrimination claims under the Americans with Disabilities Act

("ADA") and the Rehabilitation Act of 1973.

     Now pending are the County Defendants and CCS Defendants' unopposed motions to

dismiss the complaint pursuant to Rule 12(b)(6). (Docs. ##17, 37).[1]

---

[1]     Plaintiff failed to oppose the motions, despite having been granted multiple extensions of
time to do so. (See Docs. ##34, 42). By Order dated January 6, 2020, the Court deemed the
motions fully submitted and unopposed. (Doc. #46).

For the reasons set forth below, the motions are GRANTED. However, plaintiff is granted leave to file an amended complaint as specified below.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

On September 25, 2017, plaintiff was involved in, and wounded during, a shootout with several officers of the Yonkers Police Department. As a result of this incident, plaintiff suffered injuries to his stomach, hand, and leg, and was brought to Westchester Medical Center ("WMC") for treatment. Plaintiff remained at WMC for approximately thirty days, where he received open stomach surgery and wound treatment. Following his treatment at WMC, plaintiff was placed in pretrial custody at the Westchester County Jail ("WCJ") and housed in the infirmary. There, plaintiff received wound treatment, and was provided physical therapy and a walker to help him maneuver.

While housed in the infirmary, plaintiff alleges he was not provided with "any form of after care assistance with the exception of wound cleansing" and physical therapy. (Doc. #2 ("Compl.") at ECF 5).[2] He alleges he did not receive additional care because he shot a police officer.

Plaintiff further alleges that in November 2017, while he was receiving physical therapy in the infirmary, a physical therapist named Kevin inappropriately smacked his buttocks.

---

[2] "Compl. at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff states that he complained to Dr. Ulloa about this incident. At some time thereafter, plaintiff was transferred from the infirmary to the "psychiatric housing unit 1-K in the Old Jail." (Compl. at ECF 6). According to plaintiff, he was moved from the infirmary because he complained about Kevin to Dr. Ulloa. He also alleges that, after he complained to Dr. Ulloa, he overheard Dr. Ulloa or Dr. Gendell say: "Get him off the unit! [H]e's creating conflict here[.]" (Id. at ECF 7). Moreover, plaintiff alleges he transferred from the infirmary to the 1-K housing unit for the additional reason that the infirmary lacked a sufficient number of beds.

Plaintiff alleges the 1-K housing unit was not properly equipped for plaintiff's physical rehabilitation. For example, he states the "shower did not have a bench or rail," "the visit room [did] not have an area to assist . . . with dressing and undressing," and that he "was forced to travel with the walker over 200 feet to receive . . . daily wound cleansing." (Compl. at ECF 6).

Plaintiff also alleges the 1-K housing unit was filthy and unhygienic, that inmates tossed fecal matter within the unit, and that such unsanitary conditions exposed plaintiff and his open wounds to heightened risks of infection.

Further, plaintiff claims that while he was recovering from his injuries, he "could not attend outdoor recreation" and "school." (Compl. at ECF 6).

According to plaintiff, he attempted to submit a grievance to non-party Sgt. Howard concerning the 1-K housing unit's lack of shower rails and benches, and lack of available assistance near the visitation room. Allegedly, Sgt. Howard responded: "You already shot a cop, now you're in here snitching too? [W]e don't take gr[ie]vances from cop killers." (Compl. at ECF 7). Plaintiff suggests Sgt. Howard acted in this manner because the "County of Westchester does not train or supervise these officers or their contractors." (Id.).

Plaintiff alleges that, while housed in the 1-K unit, he contracted an infection on his stomach wound "that caused a massive scar that would not have otherwise ensued." (Compl. at ECF 8). He further alleges defendants' conduct caused him "debilitating headaches," "excruciating pain," and "unnecessary pain and suffering." (Id.).

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[3] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Deliberate Indifference to Serious Medical Needs

A.   Legal Standard

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). To state such a claim, plaintiff's allegations must satisfy two prongs: an objective prong and a mens rea prong. Namely, plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." Id.

To plead the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." Darnell v. Pineiro, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." Id.

In the context of medical care, two inquiries determine whether a deprivation is objectively serious. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006). Because prison officials' "duty is only to provide reasonable care," prison officials are liable only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 827 (1994)).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d at 280. This question "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)). If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. Relevant factors in determining "the seriousness of the medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

If the offending conduct is the medical treatment given, however, "the seriousness inquiry is narrower." Salahuddin v. Goord, 437 F.3d at 280. When "the prisoner is receiving appropriate on-going treatment for his condition [and] brings a . . . denial of medical care claim based on a temporary delay or interruption in treatment," courts look to "the severity of the temporary deprivation alleged by the prisoner," not "the severity of the prisoner's underlying medical condition." Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003). To qualify as a severe temporary deprivation, "a prisoner must allege acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

To plead the mens rea prong, a pretrial detainee must plausibly allege "that the defendant-official acted intentionally . . . , or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. Darnell v. Pineiro, 849 F.3d at 35. The Fourteenth Amendment's mens rea prong "is defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." Id.

"[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).[4] Courts often look to the "degree of risk associated with the negligent treatment" and have found the mens rea prong satisfied when a plaintiff did not receive treatment for a documented condition or complaint. See id. (collecting cases).

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d at 703. "Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their

---

[4]     Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

intervention, are not adequate grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

B.     Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). A plaintiff cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Id. Rather, a plaintiff must plead each defendant's personal involvement in an alleged constitutional violation.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[5] Moreover, Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

---

[5]     After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016),

C.    Application

Drs. Ulloa, Gendell, and Park argue plaintiff fails to plead a claim for deliberate indifference to serious medical needs.

The Court agrees.

In his complaint, plaintiff acknowledges that he received medical treatment while at WCJ—his wounds were regularly cared for, he was provided physical therapy, and he was given a walker to assist with mobility. Plaintiff further admits he continued to receive regular wound cleanings following his transfer from the infirmary to the 1-K housing unit, and continued to use the provided walker while housed in the 1-K unit. Although plaintiff contends he did not receive adequate "after care assistance," he does not sufficiently allege what additional care the doctors failed to provide, or what, if any, further medical treatment was necessary to treat his injuries. In other words, plaintiff fails to suggest Drs. Ulloa, Gendell, or Park did not provide adequate medical care. Accordingly, plaintiff fails to satisfy the first prong of a deliberate indifference claim.

Plaintiff also fails to satisfy the mens rea prong of the deliberate indifference analysis. Simply, plaintiff fails to suggest Drs. Ulloa, Gendell, and Park consciously or recklessly subjected plaintiff to a serious risk of harm. Moreover, plaintiff also fails plausibly to allege that Drs. Ulloa, Gendell, or Park had the authority, or made the decision, to transfer plaintiff from the infirmary to the 1-K housing unit. That plaintiff believes he should have received some unspecified, additional treatment does not alter this outcome.

---

reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

Accordingly, plaintiff's deliberate indifference to serious medical needs claim against Drs. Ulloa, Gendell, and Park must be dismissed.

To the extent plaintiff alleges a deliberate indifference to serious medical needs claim against Comm'r Spano and Dep. Comm'r Diaz, such claim too must be dismissed.

Plaintiff alleges, in conclusory fashion, that Comm'r Spano and Dep. Comm'r Diaz were aware the infirmary did not have enough beds and failed to obtain additional beds. As a result, plaintiff contends he was transferred from the infirmary to the 1-K housing unit, which was not as clean as the infirmary, and thus he was subjected to a serious risk of injection.

Yet plaintiff fails plausibly to plead Comm'r Spano or Dep. Comm'r Diaz was responsible for plaintiff's transfer to the 1-K housing unit, or that Comm'r Spano or Dep. Comm'r Diaz denied plaintiff adequate medical care, or that Comm'r Spano or Dep. Comm'r consciously or recklessly disregarded a significant risk of harm or injury to plaintiff. In other words, plaintiff fails to allege the personal involvement of Comm'r Spano or Dep. Comm'r Diaz in a constitutional deprivation. Moreover, plaintiff admits he received regular wound cleanings and care while in the 1-K housing unit.

Accordingly, plaintiff's deliberate indifference claim must be dismissed inasmuch as it is pleaded against Comm'r Spano or Dep. Comm'r Diaz.

III.  ADA and Rehabilitation Act Claims

Construing the complaint to raise the strongest arguments it suggests, plaintiff also brings claims pursuant to the ADA and the Rehabilitation Act of 1973. These statutes "impose identical requirements," so courts analyze claims under both statutes together. Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).

To state a claim under either statute, a plaintiff must plead "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." Hargrave v. Vermont, 340 F.3d 27, 34–35 (2d Cir. 2003). Critically, plaintiff must allege his mistreatment "was motivated by either discriminatory animus or ill will due to disability." Elbert v. N.Y. State Dep't of Corr. Servs., 751 F. Supp. 2d 590, 594–95 (S.D.N.Y. 2010) (quoting Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001)). "Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." Id. at 595 (collecting cases).

Here, plaintiff alleges that the 1-K housing unit was not equipped to accommodate plaintiff because it lacked handrails and benches in the shower, or an easily accessible area near the visitation room to assist plaintiff in dressing and undressing for searches following visitations. According to plaintiff, these inadequacies caused him debilitating pain.

Assuming, without deciding, that plaintiff's gunshot wounds and related injuries rendered him disabled within the meaning of the ADA, he nevertheless fails plausibly to allege an ADA or Rehabilitation Act claim. Although the accommodations in the 1-K housing unit may have been less than ideal to plaintiff, he does not allege he was prevented from taking showers or unable to bathe, or that he was unable to participate in visitation. In other words, plaintiff fails to allege inadequate accommodations denied him access to the benefits of services, programs or activities at WCJ. Although showering, dressing, and mobilizing while recovering from gunshot wounds may prove difficult and uncomfortable tasks, plaintiff's allegations respecting same do not support a cognizable ADA or Rehabilitation Act claim.

Moreover, although plaintiff states he was not able to use the recreational yard or attend school, he does not allege any defendant denied him access to these activities on account of his medical condition. Certainly there are sufficient reasons—including an inmate's own safety—to restrict access to recreation or other activity when the inmate is recovering from significant physical trauma and open lesions. Notwithstanding, plaintiff fails plausibly to allege that he was denied the benefits of any program or service at WCJ due to defendants' discriminatory animus or ill will toward plaintiff and his medical condition.

Accordingly, plaintiff's ADA and Rehabilitation Act claims must be dismissed.

## IV. Retaliation Claim

The CCS Defendants argue plaintiff fails to plead a First Amendment retaliation claim concerning his transfer from the infirmary to the 1-K housing unit.

The Court agrees.

To adequately plead a First Amendment retaliation claim, a plaintiff must plausibly allege: (i) he engaged in constitutionally protected speech or conduct; (ii) a defendant took adverse action against him; and (iii) the protected activity and adverse action are causally connected. Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015). And, as discussed above, a plaintiff must allege personal involvement for each named defendant in a Section 1983 case. See Ashcroft v. Iqbal, 556 U.S. at 676.

Courts approach prisoners' retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dolan v. Connolly, 794 F.3d at 295. Accordingly, a

prisoner pursuing a retaliation claim must not rest on "wholly conclusory" allegations, but rather must allege "specific and detailed" supporting facts. Id.

With respect to the first element, "the filing of prison grievances is a constitutionally protected activity." Davis v. Goord, 320 F.3d 346, 352–53 (2d Cir. 2003). With respect to the second element, while prison officials have broad discretion to transfer prisoners, see Montanye v. Haymes, 427 U.S. 236, 243 (1976), it is well settled that a transfer may not be made solely in retaliation for the exercise of constitutionally protected rights. Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir. 1989). However, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d at 353. "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." Id. In making this determination, the inquiry must be "tailored to the different circumstances in which retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. (alteration in original).

Finally, with respect to the third element, a plaintiff must allege a causal connection between the protected speech and the adverse action. Dolan v. Connolly, 794 F.3d at 294. To sufficiently allege a causal connection, the plaintiff's "allegations must support an inference that the protected conduct was a substantial and motivating factor for the adverse action[]." Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) (summary order).

Here, plaintiff alleges the CCS Defendants transferred plaintiff from the infirmary to the 1-K housing unit in retaliation for lodging a complaint concerning a physical therapist. Although thin, plaintiff's allegations satisfy the first and second elements of a retaliation claim, as a

similarly situated inmate of ordinary firmness perhaps would view a transfer from the infirmary to the 1-K housing unit as a deterrent to lodging complaints against prison staff.

However, plaintiff fails to satisfy the third element of the analysis. This is because plaintiff does not plausibly plead a causal connection between his complaint to Dr. Ulloa and his transfer to the 1-K housing unit. Critically, although plaintiff alleges he heard Drs. Ulloa and Gendell say among themselves: "Get him off the unit! [H]e's creating conflict here," (Compl. at ECF 7), he provides no indication that Drs. Ulloa and Gendell had the authority, or made the decision, to transfer plaintiff to a different housing unit. In other words, even if Drs. Ulloa and Gendell preferred that plaintiff be moved to a different housing unit, plaintiff does not suggest Drs. Ulloa and Gendell could have adjusted plaintiff's housing classification. Indeed, it is the province of the facility's administration, not its medical staff, to manage inmate housing classifications. See, e.g., N.Y. Comp. Codes R. & Regs. tit. 9, § 7013.8(c) (identifying the "chief administrative officer" as responsible for inmate housing classification).

Importantly, plaintiff also fails plausibly to allege that his complaint concerning a physical therapist was "a substantial and motivating factor" in his transfer to the 1-K housing unit. See Dorsey v. Fisher, 468 F. App'x at 27. Indeed, plaintiff notes he was transferred from the infirmary because of the "lack of beds available for new arrivals." (Compl. at ECF 7). In other words, by plaintiff's own admission, he very well could have been reassigned to the 1-K housing unit because the infirmary needed additional space to address other inmates' medical needs.

For these reasons, plaintiff's First Amendment retaliation claim against the CCS Defendants must be dismissed.

V.    Due Process

Plaintiff fails to state a plausible due process claim regarding his housing transfer.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

Because plaintiff does not have a protected liberty interest in his housing assignment, Cooper v. City of New York, 2014 WL 5315074, at *4 (S.D.N.Y. Oct. 17, 2014), he fails to allege facts suggesting an actionable due process claim with respect to his transfer to the 1-K housing unit.

VI.    Grievance Procedure

"[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). "Indeed, any claim that plaintiff[] [was] deprived of [his] right to petition the government for redress is belied by the fact of [his] bringing this lawsuit." Alvarado v. Westchester County, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014).

Accordingly, to the extent plaintiff alleges any of the County Defendants violated WCJ grievance procedure, such claim is subject to dismissal.

VII.    Monell Claims

The County and CCS argue plaintiff fails to state claims against them pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

Under Monell, a municipality is liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

15

may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, to assert a Section 1983 claim against the County, plaintiff must allege the existence of an official policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. See Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012).

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: (i) "a formal policy officially endorsed by the municipality"; (ii) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (iii) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware"; or (iv) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." Brandon v. City of New York, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), . . . such claims nevertheless must meet the plausibility requirements of [Bell Atlantic Corp. v. Twombly, 550 U.S. at 572], and [Ashcroft v. Iqbal, 556 U.S. at 678]." Guzman v. United States, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). "In other words, boilerplate allegations will not suffice." Id. at *3. Thus, allegations that a defendant "acted pursuant to a policy, without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F. App'x 543, 545–46 (2d Cir. 2009) (summary order).

Here, plaintiff's complaint does not contain any allegations against CSS. Moreover, plaintiff does not adequately plead an underlying violation of his constitutional rights by any of the CCS Defendants. Accordingly, his <u>Monell</u> claim against CCS is dismissed. <u>See</u> <u>Segal v. City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006) (district court "was entirely correct" in declining to address a <u>Monell</u> claim after finding no underlying constitutional violation).

In addition, plaintiff fails plausibly to allege the existence of a County policy or custom of retaliation which deprived plaintiff of a constitutional right.

First, plaintiff's allegation that the "[t]he County of Westchester does not train or supervise" its officers because Sgt. Howard allegedly refused to accept a grievance from plaintiff is entirely conclusory. (Compl. at ECF 7). "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused plaintiff's injury." <u>Adams-Flores v. City of New York</u>, 2020 WL 996421, at *7 (S.D.N.Y. Mar. 2, 2020) (citing <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993), <u>overruled on other grounds by</u> <u>Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163 (1993)). And "a 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" <u>Santana v. City of New York</u>, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) (quoting <u>DeCarlo v. Fry</u>, 141 F.3d 56, 61 (2d Cir. 1998)). Plaintiff provides no facts suggesting the County has a custom or policy of failing to train or supervise its personnel.

Second, plaintiff fails plausibly to allege the existence of a custom or policy concerning the lack of available beds in the infirmary or the County's disregard for the health and safety of inmates at WCJ. Again, plaintiff's allegations are conclusory and do not support a constitutional claim.

Third, to the extent the above claims are pleaded against Comm'r Spano and Dep.

Comm'r Diaz in their official capacities, they are duplicative of those alleged against the County.

See Hafer v. Melo, 502 U.S. 21, 25 (1991) (noting "the real party in interest in an official-

capacity suit is the governmental entity and not the named official").

Accordingly, the complaint plainly fails to state a plausible Monell claim.

VIII.   State Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims

when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3); Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).

Having dismissed the federal claims over which the Court has original jurisdiction, the

Court declines to exercise its supplemental jurisdiction over any state-law claims that may be

construed from plaintiff's complaint.

IX.   Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely

give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a)

is warranted with respect to pro se litigants, who "should be afforded every reasonable

opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81

(2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to

amend at least once when a liberal reading of the complaint gives any indication that a valid

claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Although plaintiff has not done so here, a liberal reading of the complaint indicates a

valid First Amendment retaliation claim might be stated with respect to plaintiff's transfer from

the infirmary to the 1-K housing unit. Accordingly, the Court grants plaintiff leave to file an

amended complaint—but only to replead his First Amendment retaliation claim, and only with respect to any prison staff that were personally involved in plaintiff's transfer from the infirmary unit to the 1-K housing unit.

**Plaintiff is reminded that any factual allegation in the amended complaint must be true to the best of his knowledge, information, and belief. See Fed. R. Civ. P. 11(b)(3). Also, the amended complaint will completely replace the complaint. Therefore, plaintiff should include in the amended complaint all information necessary for his First Amendment retaliation claim.**

## CONCLUSION

The motions to dismiss are GRANTED. However, plaintiff is granted leave to file an amended complaint as to his First Amendment retaliation claim only, in accordance with the instructions above.

Plaintiff shall file his amended complaint by no later than April 13, 2020, using the amended complaint form attached to this Opinion and Order. **If plaintiff fails to file an amended complaint or seek additional time to do so by April 13, 2020, the Court will deem plaintiff to have abandoned this case, and will direct the Clerk to enter judgment in defendants' favor and close this case.**

The Clerk is instructed to terminate the motions. (Docs. ##17, 37).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated: March 13, 2020
      White Plains, NY

                    SO ORDERED:

                    Vincent L. Briccetti
                    United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

No. _____
(To be filled out by Clerk's Office)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/6/16

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a *"Bivens"* action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: _____

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City          State          Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: _____

## IV.  DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 2:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 3:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 4:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

# V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____